INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, AFL–CIO, Petitioner,

v.

HANJIN CONTAINER LINES,
LTD., Respondent.

No. 89 Civ. 1188 (PKL).

United States District Court,
S.D. New York.

Oct. 19, 1989.

Thomas W. Gleason, New York City (Ernest L. Mathews, Jr., of counsel), for petitioner.

Healy & Baillie, New York City (John D. Kimball and LeRoy Lambert, of counsel), for respondent.

LEISURE, District Judge.

The International Longshoremen's Association, AFL–CIO ("ILA") has petitioned this Court to confirm and enforce arbitration awards rendered by a joint labor-management committee against Hanjin Container Lines ("HCL") and Hanjin Shipping Co., Ltd. ("Hanjin"). That committee, known as the New York Shipping Association–ILA Container Committee ("the Committee"), issued awards against HCL and Hanjin totalling $21,000 during the period from February 23, 1988 through January 10, 1989. Verified Petition to Confirm and Enforce Arbitration Award, dated February 17, 1989 ("Verified Petition"), Exh. B. Hanjin, as successor to respondent HCL, has opposed the petition to confirm and enforce the arbitration awards and cross-petitioned for an order refusing recognition and enforcement of those awards, arguing that the awards are based on the Rules on Containers, which have been declared illegal by the Federal Maritime Commission ("FMC"). *"50 Mile Container Rules"*—

*Implementation by Ocean Common Carriers Serving U.S. Atlantic and Gulf Coast Ports,* 24 Shipping Reg. (P & F) 411 (1987), *petitions for review denied sub nom. New York Shipping Association, Inc. v. Federal Maritime Commission,* 854 F.2d 1338 (D.C.Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 866, 102 L.Ed.2d 990 (1989).

## I. BACKGROUND

This case arises out of protracted litigation over the Rules on Containers ("the Rules") which are a portion of a three-year collective bargaining agreement between the New York Shipping Association, Inc. ("NYSA") and the ILA signed October 4, 1986. Verified Petition at 3. The Rules govern the movement of cargo containers in and out of ports covered by the NYSA–ILA collective bargaining agreement, and are designed to provide work or compensation for longshoremen whose jobs have been threatened by technological innovation in the shipping industry, particularly the use of containers. The Rules require the carriers to use ILA-member longshoremen to load or unload all containers that originate from or are destined for points within a 50–mile radius of any port covered by the agreement, which include most ports on the East and Gulf coasts. Rule 1(a). The Rules also provide that "a carrier or its agent or direct employer" that violates the Rules' provisions for use of ILA member longshoremen must pay liquidated damages of $1000 per container to the joint Container Royalty Fund, which compensates longshoremen for the lost work. Rule 7(c). Rule 9(a) creates a joint labor-management committee to "hear and pass judgment on any violations of" the Rules. *Id.*

The Rules have been a frequent source of litigation. In 1980 and 1985, respectively, the Supreme Court held that the Rules constitute a valid work preservation agreement under the federal labor laws. *National Labor Relations Board v. International Longshoremen's Association,* 447 U.S. 490, 100 S.Ct. 2305, 65 L.Ed.2d 289 (1980) *("ILA I"); National Labor Relation Board v. International Longshore-*

*men's Association,* 473 U.S. 61, 105 S.Ct. 3045, 87 L.Ed.2d 47 (1985) *("ILA II").*

The Supreme Court in these cases addressed only the validity of the Rules under the National Labor Relations Act and did not consider the legality of the Rules under federal shipping laws. The Court found that the question of the legality of the Rules under the shipping laws "present difficult and complex problems which are not properly before" the Court. *See ILA I, supra,* 447 U.S. at 512, 100 S.Ct. at 2317.

In 1981, shortly after the ruling in *ILA I,* the issue of the validity of the Rules under federal shipping laws was presented to the FMC. Petitioner's Addendum at 89. On August 3, 1987, the FMC completed its extensive review of the Rules and found that "Rules 1 and 2 of the Rules on Containers are ... unlawful and violative of sections 14 Fourth, 16 First, 17, second paragraph, and 18(a) of the Shipping Act, 1916, sections 10(b)(6)(C), 10(b)(11)–(12) and 10(d)(1) of the Shipping Act of 1984, and section 4 of the Intercoastal Shipping Act, 1933." *"50 Mile Container Rules",* Petitioner's Addendum at 169. The FMC held that the Rules "are facially discriminatory and burdensome as applied to certain classes of shippers and cargo consolidators. These discriminations and burdens are not justified by transportation circumstances properly cognizable under the Shipping Acts." *"50 Mile Container Rules",* Petitioner's Addendum at 5. The FMC ordered the carriers to remove the Rules from their tariffs. *"50 Mile Container Rules",* Petitioner's Addendum at 169. The FMC stayed the effective date of its order for 90 days, in order to "avoid any unnecessary disruption of the collective bargaining process by giving the parties ample time to accommodate the ILA's interests in some manner other than the present Rules on Containers." *"50 Mile Container Rules",* Petitioner's Addendum at 168–69.

ILA and NYSA appealed the FMC's decision to the Court of Appeals for the District of Columbia Circuit. On September 28, 1987, the D.C. Circuit issued a stay of the FMC's order pending that court's review of the issues. Affidavit of John Bow-

ers, June 7, 1989 ("Bowers Aff.") at 6. On August 9, 1988, the D.C. Circuit denied the petitions for review of the FMC order, finding no error in either the FMC's exercise of jurisdiction over the Rules as incorporated in the carrier's tariffs, or the FMC's determination that the Rules violated federal shipping laws. *NYSA v. FMC, supra*, 854 F.2d at 1377. NYSA moved for a stay of the D.C. Circuit's decision, and, thus, a further stay of the FMC order, pending review by the Supreme Court. On October 14, 1988, the D.C. Circuit granted a stay of its decision, and by implication, of the FMC's order, pending disposition of the appeal by the Supreme Court. Bowers Aff. at 6–7. The Supreme Court denied the petition for certiori on January 23, 1989. *NYSA v. FMC, supra*, —— U.S. ——, 109 S.Ct. 866, 102 L.Ed.2d 990 (1989).

## II. FACTUAL BACKGROUND

Five arbitration awards against Hanjin are at issue in this case. Three of these awards, totalling $11,000, were issued against HCL, Hanjin's predecessor, on February 23, 1988, while the D.C. Circuit's order staying the FMC's decision pending review by that court was in effect. HCL was represented at the hearing before the Committee on the violations leading to these awards by its Customer Service Manager, Kenneth C. Wiebke. Bowers Aff. at 3. Mr. Wiebke apparently presented a substantive defense to at least one of the claims of violations at the hearing. In addition, HCL had previously appeared before the Committee and had in fact taken at least one prior award against it to the Emergency Hearing Panel, the appeals panel designated under the Rules.

At the time these awards were issued, HCL was not a member of the NYSA, nor had it subscribed to the NYSA–ILA collective bargaining agreement. Therefore, HCL was not bound to put these grievances before the arbitrator. However, HCL appeared at the arbitration panel on more than one occasion and made substantive objections to charges of violations of the Rules. Apparently at no time during the hearing or immediately thereafter did HCL challenge the jurisdiction of the arbi-

tration panel over violations of the Rules allegedly committed by HCL. Further, it appears that at no time during its appearances did HCL contest being bound by the Rules.

On August 31, 1988, HCL and Korea Shipping Corporation ("KSC") signed a subscription agreement to the NYSA–ILA agreement. Cross–Petition to Refuse to Recognize and Enforce Arbitration Awards, dated April 19, 1989 ("Cross–Petition"), Exh. 1. Hanjin, a Korean corporation, is the successor to HCL and KSC. Cross–Petition at 1. The arbitration panel issued two awards against Hanjin for violations of the Rules between the time HCL subscribed to the ILA–NYSA agreement on August 31, 1988, and the Supreme Court's denial of the petition for certiori on January 23, 1989. Both of these arbitration decisions came while the D.C. Circuit's second stay was in effect. The awards were issued on October 25, 1988, and January 10, 1989, and were for $1000, and $7000, respectively.

## III. DISCUSSION

Hanjin raises two defenses to the petition for enforcement of the arbitration awards. First, Hanjin claims that it is not bound by the first three arbitration awards because HCL was not a party to the NYSA–ILA collective bargaining agreement at the time those arbitration awards were issued, and, thus, was not bound by the first three arbitration awards. Second, Hanjin challenges the arbitration awards because they are based on the Rules, which had been held to be illegal under federal shipping laws by the FMC at the time the Committee made its rulings against HCL and Hanjin. Hanjin contends that it is against public policy to enforce arbitration awards that are based on illegal contracts. ILA counters that the awards should be enforced because it was the intent of the FMC and the D.C. Circuit that the Rules continue in force until the issue of the Rules' legality was finally decided by the courts.

## A. *Jurisdiction of the Arbitrators*

 Petitioner argues that Hanjin cannot now contest the jurisdiction of the arbitrators, because Hanjin participated in the arbitration process on the first three awards and did not challenge the arbitrators' jurisdiction at that time. Petitioner's argument is that HCL, by appearing in the arbitration proceedings and failing at that time to challenge the jurisdiction of the Committee over HCL, waived any jurisdictional objection it may have had.

The law supports petitioner's contentions that "[i]f a party voluntarily and unreservedly submits to arbitration, he cannot later argue that the arbitrator had no authority to resolve it." *Jones Dairy Farm v. Local No. P–1236*, 760 F.2d 173, 175 (7th Cir.1985), *cert. denied*, 474 U.S. 845, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985). *See also Johnson v. United Food and Commercial Workers*, 828 F.2d 961, 964–65 (3rd Cir. 1987); *Teamsters Local Union v. J.H. Merritt & Co.*, 770 F.2d 40, 42 (3rd Cir.1985). Further, an arbitration agreement does not have to be express, it may be implied from the parties' conduct. *Teamsters, supra* at 42. Once a party demonstrates a clear intention to arbitrate a dispute, the party is bound by the decision of the arbitrators. *Id.* Alternatively, a party can waive the right to contest the jurisdiction of an arbitrator by failing to raise that defense before the arbitrator. *Id.*

Accordingly, Hanjin's defense that the arbitrators lacked jurisdiction to hear the dispute is without merit.

## B. *Illegality Defense*

 Hanjin's second challenge to the arbitration awards is that the awards are based on an illegal contract—specifically, the Rules as included in the NYSA–ILA collective bargaining agreement. ILA presents two distinct reasons why the awards should be enforced. First, ILA claims that FMC and the D.C. Circuit intended, through the various stays issued by the Commission and the court, that the Rules be enforced until their lawfulness under the federal shipping laws was conclusively determined. Second, the ILA argues that the Rules should be enforced because the FMC found the Rules to be unlawful as applied to third parties, but not as between the ILA and Hanjin or any other carrier.

### 1. Effect of the Stays

Hanjin is correct that an arbitration award based on an illegal contract should not be enforced. The issue presented by ILA, then, is whether, in fact, the Rules were illegal at the time the arbitration awards were ordered by the ILA–NYSA Committee. ILA contends that the stays not only postponed the FMC order that the Rules be removed from all carrier tariffs, but also stayed the decision of the Commission, and, later, of the D.C. Circuit, that the Rules were illegal.

ILA's position is supported by an FMC decision rendered after the D.C. Circuit had ruled. After the D.C. Circuit denied the petitions for review on August 9, 1988, and before the court granted its stay pending appeal to the Supreme Court, some carriers removed the Rules from their tariffs. After the D.C. Circuit granted the stay on October 14, 1988, certain carriers sought to reinstate the Rules into their tariffs. FMC, in granting the carriers the right to reinstate the Rules into their tariffs during the period of the stay, stated that it did

not accept the argument made by some of the persons opposed to the Special Permission Applications that it must reject any new tariff incorporating the Rules on Containers.... Here, the Commission interprets the recent actions by the U.S. Court of Appeals for the District of Columbia Circuit as indicating an intent on the part of the Court to suspend the legal effect of its own decision and of the underlying Commission decision against the Rules until the judicial review process is completed. A Commission action rejecting the Carriers Container Council tariff on the ground that the tariff is substantively unlawful would be inconsistent with the Court's purpose.

Bowers Aff., Exh. 5.

This Court finds the ruling on the effect of the stays rendered by FMC, the lead

agency on this matter, to be instructive. The FMC clearly indicated its understanding and expectation that the Rules would be used and fully enforced during the period of the stays.

### 2. Effect on the Labor Agreement

ILA further argues that the FMC decision invalidating the Rules had no impact on the collective bargaining agreement between ILA and the carriers and only affected the relationship between carriers and third parties. This in fact appears to be the holding of the FMC.

> The Commission has neither personal jurisdiction over the ILA nor subject matter over the union's collective bargaining agreement with the carriers, and this investigation raises no issue regarding the lawfulness of the agreements.

*"50 Mile Container Rules"*, Petitioner's Addendum at 3–4. At least one court has found this language to mean that the FMC's opinion had no impact on the legality of any arbitration finding under the collective bargaining agreement. *International Longshoremen's Association v. Orient Overseas Container Line*, 88 Civ. 5386 (JFK), 1989 WL 82410 (July 21, 1989). However, the removal of the Rules from the carriers' tariffs will undoubtedly have an effect on the application of the compensation scheme provided under the collective bargaining agreement. Thus, this Court does not believe that the exclusion of the Rules from the carriers' tariffs as mandated by the FMC ruling and the continued inclusion of the Rules in the collective bargaining agreement can be viewed as mutually exclusive. The carriers certainly expected the Rules to be a portion of their tariffs when they reached their agreement with the ILA. Accordingly, the removal of the Rules from the tariffs is not without an effect on the relationship between the carriers and the ILA. FMC, in fact, indicated its understanding of the effect of its ruling on labor-management relationship. The Commission explained that it issued the original 90–day stay in part to "avoid any unnecessary disruption of the collective bargaining process." *"50 Mile Container Rules"*, Petitioner's Addendum at 168–169.

This Court, however, does not need to reach the issue of the effect of the FMC ruling on the relationship between the ILA and the carriers, having found that the stays issued by the FMC and D.C. Circuit continued the Rules in force during the period at issue in this case. This Court's ruling is supported by at least two other recent decisions in the District on similar facts. First, Judge Conboy found that all question of illegality of the Rules was removed while the stays were in effect. *International Longshoremen's Association v. C.N. Lloyd Brasileiro*, 88 Civ. 8686(KC) (S.D.N.Y. July 10, 1989). Second, Judge Keenan, while relying primarily on the notion that the FMC decision did not affect the collective bargaining agreement, also found the stays allowed the Rules to remain in force until the final Supreme Court ruling. *Orient Overseas Container Line, supra*, slip op. at 5–6.

At least one court has refused to enforce the arbitration awards in an almost identical situation. *Steamship Trade Association of Baltimore–International Longshoremen's Association Container Royalty Fund v. Shipping Corp. of India*, Civil No. H–88–2050, 1989 WL 141666 (D.Md. July 18, 1989) (Harvey, J.). However, in reaching his decision that the Rules were illegal and thus unenforceable, Judge Harvey described the original 90–day stay granted by the FMC after its invalidation of the Rules as a "grace period" and thus not a true stay. Further, Judge Harvey appears to have been unaware of either of the stays granted by the D.C. Circuit pending appeal or of the FMC's later decision allowing carriers to reintroduce the Rules in their tariffs during the period of the stays. Accordingly, this Court declines to follow Judge Harvey's ruling and joins the result reached by Judges Conboy and Keenan.

### IV. CONCLUSION

The Court finds that the Rules were in effect at the time the arbitration awards were entered and that the Committee had

jurisdiction over the respondent when the awards were entered.

Accordingly, the petition to confirm and enforce the arbitration in amount of $21,-000 is GRANTED.

Further, the cross-petition to refuse recognition and enforcement of the arbitration awards is DENIED.

Accordingly, the judgment clerk is ordered to enter judgment in favor of petitioner in the amount of $21,000.

SO ORDERED.