### NORTHERN TANKERS CYPRUS LTD., Plaintiff,

### v.

### LEXMAR CORP. & Starlux Corp., Defendants.

### No. 90 Civ. 6777 (JES).

United States District Court, S.D. New York.

Jan. 15, 1992.

---

Healy & Baillie, New York City (John D. Kimball, of counsel), for plaintiff.

Thelen, Marrin, Johnson & Bridges, New York City (Paul A. Winick, of counsel), Christopher P. Keane, New York City, for defendants.

MEMORANDUM OPINION
AND ORDER

SPRIZZO, District Judge.

Defendant in the above-captioned action moves to stay this action in favor of arbitration. For the reasons that follow, defendant's motion is granted.

## FACTS

■ During the period of June 27, 1990 through August 30, 1990, representatives of Sea Team, the Norwegian agent for Northern Tankers Cyprus Limited ("Northern Tankers") negotiated with Lexmar Corporation of Liberia ("Lexmar")[1] for the sub-charter of the "Independence," which is owned by Northern Tankers. *See* Kimball Affid. at ¶ 7–11. On September 6, 1990, Lexmar indicated that it considered their discussions to have failed due to "lack of communications." *See* Affidavit of Christopher P. Keane ("Keane Affid.") at ¶ 4, Ex. 1. Northern Tankers' response was that the parties had entered into a binding charter because they had agreed upon all essential terms and that Lexmar was therefore repudiating that charter. *See* Kimball Affid. at ¶ 14. On September 28, 1990, counsel for Northern Tankers forwarded to Lexmar a demand for arbitration which appointed an arbitrator and stated that "we hereby demand arbitration of [Northern Tankers'] claim for damages caused by your non-performance of the charter." *See* Kimball Affid. at Exhibit 26; Notice of Motion at Exhibit 2. Thereafter, correspondence continued between the parties.[2] On October 8, after several commu-

---

1. Lexmar is a Liberian bearer share company owned by Starlux Incorporated. *See* Affidavit of John K. Kimball ("Kimball Affid.") at fn. 1.

2. Northern Tankers contends that a phone conversation occurred between the parties prior to Lexmar's acceptance of its demand, during which plaintiff asserted that it would not agree to have the arbitrators decide the issue of whether there was a binding charter. The Court cannot accept that representation, which Lexmar disputes, as true, because on a motion to stay pending arbitration, the Court must accept the moving party's version of the facts as

true. *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 70 F.2d 297, 299 (2d Cir.), *aff'd*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1934); *Pas–Ebs v. Group Health Inc.*, 442 F.Supp. 937, 941 (S.D.N.Y.1977). In any event, Northern Tankers' contention is legally irrelevant because Northern Tankers never withdrew its demand to arbitrate the issue of damages and there is thus no dispute that the parties agreed to arbitrate that issue. Since, as discussed *infra*, an agreement to arbitrate the issue of damages necessarily encompasses the issue of whether a valid charter was formed, the only way Northern Tankers could have avoided arbi-

nications had been exchanged between the parties as to what disputes should be arbitrated, Lexmar accepted Northern Tankers' demand and appointed an arbitrator, but reserved its right to contest the existence of the charter in the arbitration proceeding. *See* Keane Affid. at Ex. 3. Plaintiff, asserting that the arbitrators cannot resolve that issue, instituted this action seeking judicial resolution of that issue, and Lexmar moves to stay this action in favor of arbitration.

## DISCUSSION

 Whether a valid charter party has been formed is ordinarily for the court to decide, *see Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987), unless the parties have expressly or impliedly agreed to submit that issue to the arbitrators. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Moreover, an agreement to submit that issue to the arbitrators may be implied from the conduct of the parties. *See Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 305, — L.Ed.2d — (1991); *Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 42 (3rd Cir. 1985); *International Longshoremen's Ass'n v. Hanjin Container Lines, Ltd.*, 727 F.Supp. 818, 821 (S.D.N.Y.1989).

 Northern Tankers argues that the only issue submitted to the arbitrators and the only issue they have jurisdiction to decide is the amount of damages to which Northern Tankers is entitled as a consequence of Lexmar's non-performance of

the charter.[3] Lexmar, while contesting the existence of the charter, asserts that plaintiff, by demanding arbitration of its damages claim, has also necessarily submitted to the arbitrators the threshold question of whether the parties entered into the charter party upon which the claim for damages rests.[4] The Court agrees with Lexmar's contention.

As would be the case in any contract action, part of the plaintiff's burden of proof in establishing a claim for damages for breach of the provisions of a charter party, is the existence of a valid and existing charter party which defendant has breached. *See Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 561 (S.D.N.Y.1985); *Stratton Group, Ltd. v. Sprayregen*, 458 F.Supp. 1216, 1217 (S.D.N.Y.1978). Therefore, when plaintiff demanded arbitration "for damages caused by [Lexmar's] non-performance of the charter," upon Lexmar's acceptance of that demand, the arbitrators were clearly empowered to decide that issue.

Plaintiff's reliance on *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 523 F.2d 527 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), is misplaced. In *Interocean*, defendant refused to accept plaintiff's demand for arbitration. As a consequence, the Court was required to determine that a valid charter party was formed before it could compel arbitration. In the instant case, Lexmar accepted the arbitration demand and thus an agreement to arbitrate, separate and distinct from that contained in the charter party, was formed, which agreement, as noted above, necessar-

---

tration of that issue would have been to condition its demand for arbitration upon Lexmar's acceptance of a judicial resolution of that issue, or to have withdrawn its demand entirely, neither of which it elected to do.

**3.** Northern Tankers contends that because the arbitration provision of the charter calls for arbitration of all disputes "arising out of the charter," this language presupposes the existence of a charter and consequently cannot encompass the issue of whether a charter was formed. *See Metal Transport Corp. v. Compania Nat'l Naviera S.A.*, 268 F.Supp. 456 (S.D.N.Y. 1965); *Sinva, Inc. v. Merrill, Lynch, Pierce, Fen-*

*ner & Smith*, 253 F.Supp. 359 (S.D.N.Y.1966). However, the cases relied upon by plaintiff have no applicability where, as here, the arbitrators' power to decide that issue rests upon a separate agreement to arbitrate, and not the arbitration agreement set forth in the charter itself.

**4.** In view of the Court's resolution of this issue, there is no need to pass on the merits of defendant's claim that a series of telefax and telex communications between the parties gave rise to a separate agreement to arbitrate the issue of the existence of a charter party, quite aside from Lexmar's acceptance of Northern Tanker's demand.

ily encompassed the issue of whether a valid charter party existed.

Plaintiff further contends that no valid agreement to arbitrate was formed because defendant's purported acceptance was in reality a counter-offer to arbitrate the existence of the charter, which plaintiff never accepted.[5] This argument lacks merit, however, for the simple reason that plaintiff continued to insist on its right to arbitrate the damages issue, a claim necessarily inconsistent with its position that the arbitrators lacked the power to resolve the issue of whether a charter had been formed.[6]

*Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.,* 455 F.Supp. 211 (S.D.N.Y. 1978), relied on by plaintiff is also inapposite. In *Pollux Marine,* the court found that the parties did not intend to arbitrate a dispute as to the existence of the charter. *Id.* at 219. This Court has already found that the parties did in fact agree to arbitrate that issue in an agreement quite aside from the charter itself. Thus, there can be no issue here, as there was in *Pollux Marine,* as to whether the parties intended that the arbitration agreement set forth in the charter could be severed so as to permit arbitration of the issue of whether the charter party, in which it was set forth, was valid and existing.

## CONCLUSION

Accordingly, for the reasons given above, defendant's motion to stay this action in favor of arbitration is granted.

It is SO ORDERED.

---

5. It is interesting to note that the letter from Mr. Sherriff, upon which plaintiff relies to support its claim that it communicated to defendant its view that the existence of the charter would not be arbitrated, prior to Lexmar's acceptance of its offer, does not support that contention. It states only: "Please be advised that the demand for arbitration has been served as a result of charterers failure to confirm the terms of the agreed fixture. The claim will relate to non-performance of the charter and will be based on the difference between the agreed charter rate and the rate of hire that is to be paid to Conoco under the terms of the head charter." *See* Kimball Affid. at Ex. 27.

6. Therefore, even if Lexmar's response were regarded as a counter-offer, it is clear that plaintiff accepted at least that portion of the counter-offer which permitted the arbitrators to determine the issue of damages, which necessarily conferred upon the arbitrators the power to decide the issue of whether a valid charter party was formed.