In the Matter of the Complaint of AMERICAN PRESIDENT LINES, LTD., as Owner of M/V President Washington, for Exoneration from or Limitation of Liability,

In re the Complaint of HANJIN SHIPPING COMPANY, LTD., as Bareboat Charterer, and Highlight Navigation Corporation, as the sole owner of the vessel Hanjin Hong Kong, Lloyd's and IMO No. 8502896, for Exoneration from or Limitation of Liability.

Nos. 94 Civ. 7710 (RWS), 95 Civ. 3315 (RWS).

United States District Court, S.D. New York.

June 27, 1995.

**310**

Burlingham Underwood, New York City (Terry L. Stoltz, of counsel), for American President Lines, Ltd.

Healy & Baillie, New York City (John D. Kimball, of counsel), for Hanjin Shipping Company, Ltd., et al.

Mary Jo White, U.S. Atty. for the S.D. of N.Y., U.S. Dept. of Justice, New York City (Frank W. Hunger, Asst. Atty. Gen., Janis G. Schulmeisters, Attorney in Charge Torts Branch, Civ. Div., of counsel), for the U.S.

Chalos & Brown, P.C., New York City (Michael G. Chalos, Martin F. Casey, Harry A. Gavalas, of counsel), for claimants.

Marcigliano & Campise, New York City (David Y. Loh, of counsel), for Claimants Royal Ins. Co. of America.

Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City (Raymond P. Hayden, of counsel), for Claimants Mitsui & Co.

Waesche, Sheinbaum & O'Regan, P.C., New York City (Donald M. Waesche, of counsel), for Claimants E.I. DuPont de Nemours & Co.

Law Offices of Dennis A. Cammarano, Long Beach, CA (Dennis A. Cammarano, of counsel), for Claimant Tee Top of California.

Kennedy & Lillis, New York City (Charles E. Schmidt, of counsel), for Claimant Mingtai Fire & Marine Ins. Co. et al.

Hill, Betts & Nash, New York City (Mark M. Jaffe, of counsel), for Claimant Orient Overseas Container Line, Inc.

## OPINION

SWEET, District Judge.

Motions are before this Court relating to *forum non conveniens,* transfer of venue and choice of law in two related limitation proceedings arising out of the collision of two vessels in Korean waters.

For the reasons set forth below, in the limitation proceeding (the "APL Action") brought by American President Lines, Ltd. ("APL"), APL's motion to strike the Fifth affirmative defenses of Hanjin Shipping Company Ltd. ("Hanjin") and Highlight Navigation Corporation ("Highlight") (together the "Hanjin Claimants") regarding Korean law will be granted and that defense will be stricken with leave to replead. APL's motion for summary judgment as to the Hanjin Claimants' Sixth and Seventh affirmative defenses the APL Action will be granted.

In a related limitation action brought by Hanjin (the "Hanjin Action"), Hanjin's motion to dismiss that action on *forum non conveniens* grounds will be denied.

In the APL Action, APL and numerous cargo claimants move to strike affirmative defenses raised by Hanjin and Highlight in their Answer, these defenses being the Hanjin Claimants' Fifth, Sixth and Seventh affirmative defenses, respectively asserting that: (i) Korean law governs all claims in the APL action (Fifth); (ii) the APL action should be dismissed on grounds of *forum non conveniens* (Sixth); and (iii) venue should be transferred to the Western District of Washington (Seventh). At an initial hearing this Court determined to treat this motion as one for summary judgment regarding the *forum non conveniens* and venue transfer defenses, since these defenses turned on questions of fact, and the motion was so deemed. The parties were granted an opportunity and additional time to supplement their submissions, further argument was heard, and the motion is now considered as one for summary judgment as to the affirmative defenses.

In the Hanjin Action, which was commenced by Hanjin and Highlight in the U.S. District Court for the Western District of Washington on October 25, 1994 and subsequently transferred to this Court and accepted as related to the APL Action, Hanjin and Highlight move for dismissal on grounds of *forum non conveniens.*

### The Parties

APL is a Delaware corporation engaged in worldwide shipping, with its principal place of business in Oakland, California. APL is the owner of the *President Washington*, an American-flag vessel. Hanjin is a Korean corporation engaged in worldwide shipping, with its principal place of business in Seoul, Korea. Highlight is a Liberian corporation whose only place of business is Monrovia, Liberia. Hanjin is the bareboat charterer and Highlight is the owner of the *Hanjin Hong Kong,* a Liberian-flag vessel.

### Prior Proceedings

#### The APL Action

In the period immediately following the collision of the *Hanjin Hong Kong* and the *President Washington* on May 2, 1994 (the "Collision") in the territorial waters of the Republic of Korea ("Korea"), six lawsuits were filed in this Court which named either Hanjin or Highlight or both, as defendants, two of which also named APL as a defendant. APL filed for concursus under the Limitation of Liability Act, 46 U.S.C.App. § 185 on October 24, 1994, thus commencing the APL Action for exoneration from, or limitation of, liability. On November 7, 1994 this Court issued an Order setting a deadline for the filing of claims pursuant to Supplemental Rule F(4), Fed.R.Civ.P. Hanjin Shipping Company Ltd. and Highlight Navigation Corporation (together "Hanjin") are claimants in the APL Action. Hanjin filed its Answer on January 4, 1995, asserting, *inter alia,* the affirmative defenses at issue in the APL Action.

Commencing shortly after the Court's November 7 Order, various cargo claimants filed notices of claim, and continued to do so through the deadline of January 5, 1995. By that date claims had been filed by over 250 claimants totalling over $40,000,000, including a claim by the Hanjin Claimants seeking $7,600,000. Numerous cargo claimants also filed answers in the early part of this year. During the pendency of the within motions several motions to file late claims, all unopposed, were made by additional cargo claimants, and granted.

APL filed the within motion on January 26, 1995. By notices filed in early February of 1995, numerous cargo claimants joined in APL's motion and submitted memoranda in support thereof. Hanjin submitted its opposition to APL's motion to strike on March 1, 1995. APL filed a Reply Memorandum on March 6, 1995. Various cargo claimants filed their Reply Memoranda shortly thereafter. Hanjin filed a Sur–Reply Memorandum on March 15, 1995.

Upon consent of the parties and with permission of the Court the return date of APL's motion was adjourned twice. Oral argument was initially heard on March 22, 1995. At that time it was determined by this Court to treat APL's motion to strike the Hanjin Claimants' Sixth and Seventh affirmative defenses as one for summary judgment on the same defenses and the motion to strike was so deemed on that date, regarding those two defenses. The parties were afforded additional opportunity and time to supplement their submissions and the motion was deemed fully submitted on April 19, 1995.

#### The Hanjin Action

Hanjin commenced the Hanjin Action, as mentioned above, on October 25, 1994 in the Western District of Washington. On October 28, 1994 that Court issued an Order enjoining further claims against Hanjin and directing notice to be issued to potential claimants to file claims no later January 25, 1995. On December 2, 1994, Hanjin filed the instant motion to dismiss on grounds of *forum non conveniens.* On December 9, 1994, APL moved for a transfer of venue to this Court. That motion was ultimately granted, and the Hanjin Action was transferred to this Court by Order of the Honorable Carolyn R. Dimmick, Chief Judge, U.S. District Court, Western District of Washington, on April 10, 1995. This Court accepted the Hanjin Action as related to the APL Action on May 23, 1995.

In the Hanjin Action, Hanjin moves for dismissal based on grounds of *forum non conveniens.* Because resolution of the motions in the two actions require resolution of common questions of law and turn on common issues of fact, they are taken together.

### The Korean Action

On October 21, 1994, Hanjin filed an action in Seoul, Korea District Court, Docket No. 94 PA 7835, petitioning for limitation of liability pursuant to the Korean Commercial Code articles 746 and 747. Hanjin requested that the decision of the Seoul District Court on commencement of the limitation proceedings be delayed until this Court rules on the issue of *forum non conveniens* and that action has been dormant since then.

### The Facts

On May 2, 1994, the *President Washington* and the *Hanjin Hong Kong* collided in the territorial waters of Korea in the vicinity of the port of the city of Pusan. The *Hanjin Hong Kong* was outbound headed for Osaka, Japan. The *President Washington* was inbound from Taiwan to Pusan to discharge and load cargo. The weather conditions were foggy and visibility was limited. Both ships took last minute measures to avoid the collision, but at about 10:26 p.m. local time, the *President Washington* and the *Hanjin Hong Kong* collided. The *Kota Berani*, a Singapore-flag vessel engaged predominantly in Far East trade, was in close proximity to the two vessels at the time of the Collision.

Both vessels sustained extensive hull damage. Cargo aboard the *President Washington* was damaged. None of the *Hanjin Hong Kong's* cargo was damaged. After the Collision, the *Hanjin Hong Kong* and the *President Washington* entered Pusan harbor for cargo, hull, and container damage surveys. Nearly all the *Hanjin Hong Kong* cargo was discharged, surveyed, and/or transshipped at Pusan to other vessels or modes of transportation onward to the intended destinations.

While attempting to dock after the accident, the *President Washington* ran aground. As a result, she suffered bottom damage. Liability for the bottom damage is an issue in the Hanjin Action.

The *President Washington*, after de-ballasting to get off the bottom, proceeded to a berth at the Pusan East Container Terminal ("PECT") where cargo containers were offloaded, surveyed, disposed of and/or transshipped. On May 7, 1994, five days after the Collision, a fire broke out aboard the *President Washington* while she was at the PECT berth in Pusan. Five cargo containers were jettisoned from the *President Washington* during efforts to extinguish the fire. Five additional containers were damaged by the fire. Both vessels were repaired at shipyards in Korea.

The *President Washington* is an 860 foot U.S.-flag container ship, owned by APL whose corporate headquarters is in Oakland, California. Documents relating to the maintenance and condition of the *President Washington* prior to the Collision, and surveys of and repairs carried out on the *President Washington* after the Collision are in APL's possession in the United States. All crew members aboard the *President Washington* on the day of the collision are U.S. citizens.

The *Hanjin Hong Kong* is a 732–foot Liberian-flag container ship, presently owned by Highlight Navigation Corporation, a Liberian corporation. The *Hanjin Hong Kong* was and is bareboat chartered on a "charter hire purchase basis" to Hanjin. The *Hanjin Hong Kong* makes U.S. port calls in Seattle, Washington and Portland, Oregon. All vessel records, voyage records, and survey and damage repair records for the *Hanjin Hong Kong* are in Korea. All crew members aboard the *Hanjin Hong Kong* on the day of the Collision reside in Korea. Following the Collision the Master of the *Hanjin Hong Kong* resigned from Hanjin and now works for another company in Korea and is beyond the control of Hanjin.

Both vessels and their cargo were surveyed by Korean surveyors after the accident.

APL is headquartered in Oakland, California. APL maintains offices in Pusan and Seoul, South Korea. APL also maintains offices and operations in Seattle.

Hanjin is headquartered in Seoul, Korea. It has North American regional headquarters in Long Beach, California and maintains offices and operations in New York, Atlanta, Baltimore, Boston, Chicago, Cincinnati, Cleveland, Dallas, Houston, Memphis, Minneapolis, Norfolk, Orlando, Portland, San Francisco, Savannah, Seattle, St. Louis, and

Wilmington. Hanjin vessels regularly call at the American ports of Savannah, Wilmington, New York, Long Beach, Oakland, Seattle and Portland.

The U.S. Coast Guard Marine Safety Office in Honolulu, Hawaii investigated the Collision. Summaries of interviews conducted with *President Washington* crew members are in the possession of that office.

No parties who were shipping cargo aboard the *Hanjin Hong Kong* have filed claims in either the APL Action or the Hanjin Action. Over 250 claimants have filed more than 30 claims in the APL Action and many claimants with cargo on board the *President Washington* have asserted claims in both Actions. Slightly less than half of all the claims filed are for shipments that were both loaded and bound for Asian ports. Conversely more than half of the cargo claims concern shipments either loaded in or bound for a U.S. port.

At least sixteen of the entities who have filed cargo claims in the APL Action have expressly identified themselves as United States entities. An additional twenty-nine claimants appear to be American entities although they have not expressly identified themselves as such in their notices of claim. The United States of America is a claimant in both actions.

### Discussion

#### I. Legal Standards

##### A. Rule 56 Standards for Summary Judgment

APL's motion to strike the Hanjin Claimants' Sixth affirmative defense of *forum non conveniens* has been converted to a motion for summary judgment pursuant to Rule 56. The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter

of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir.1991).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991). Summary judgment is appropriate here where there are no genuine issues of material fact regarding the factors pertinent to the Hanjin Claimants' *forum non conveniens* and venue defenses.

##### B. Forum Non Conveniens

An action should only be dismissed on grounds of *forum non conveniens* if the balance of factors strongly favors the party seeking dismissal. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). District courts should dismiss on *forum non conveniens* grounds only where a trial in the United States would be "unjust, oppressive, or vexatious" and not merely inconvenient for the party seeking dismissal. *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947); *American Home Assur. Co. v. Insurance Corp. of Ireland, Ltd.*, 603 F.Supp. 636, 640 (S.D.N.Y.1984).

The Court in *Gulf Oil* set out both the private and public interest factors to consider in a *forum non conveniens* motion. The private factors include: the relative ease of access to sources of proof, the availability of compulsory process for unwilling witnesses, the cost of obtaining attendance for willing witnesses, possibility of view of premises, if relevant, enforceability of possible judgment, and other practical problems that could make the trial protracted, difficult, or costly (e.g., application of foreign law or translation of documents). *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. The public interest factors include: the administrative difficulties resulting from a backlog of litigation in the district, and the imposition of jury duty on a district having no relation to the litigation and the familiarity of the trial court with the applicable law. 330 U.S. at 508–09, 67 S.Ct. at 843. Plaintiff's choice of a forum which is not convenient to an adversary may not be allowed to vex or oppress the defendant through the infliction of undue expense or difficulty. However, unless a balance of these factors is strongly in favor of the party seeking to dismiss the action, in this case the Hanjin Claimants, the plaintiff's choice of forum should not be disturbed. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. This balance must be even stronger when, as here, the party who chose the forum is an American entity and the alternative forum is a foreign one. *See Olympic Corp. v. Societe Generale*, 462 F.2d 376, 378 (2d Cir.1972).

It is proper for a motion concerning the doctrine of *forum non conveniens* to proceed as one for summary judgment when such motion turns on factual matters outside the pleadings. *See Evans v. Cunard*, 1994 WL 150826, 93 Civ. 5745 (S.D.N.Y., April 19, 1994); *Farmanfarmaian v. Gulf Oil*, 437 F.Supp. 910, 913 (S.D.N.Y.1977); *Dassigienis v. Cosmos Carriers & Trading Corp.*, 321 F.Supp. 1253, 1254–55 (S.D.N.Y.1970). In such cases the usual burden is placed upon the movant to show that no genuine issues of material fact exist as to facts which weigh on the court's decision as to forum. *See Allan v. Brown & Root*, 491 F.Supp. 398, 400 (S.D.Tex.1980). Since APL seeks to resolve, at this time, the Hanjin Claimants' contention that Korea may be the proper forum for this litigation, it is APL who must carry the burden of showing that there are no genuine issues of material fact as to forum.

## C. *Transfer of Venue*

The transfer of limitation proceedings is governed by Rule F(9) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which provides that "For the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district." This rule conforms closely to 28 U.S.C. § 1404(a) and standards for applying F(9) are those which have been developed for the application of § 1404(a). *See In re Alamo Chemical Transportation Co.*, 323 F.Supp. 789, 791 (S.D.Tex.1970).

The factors to be considered on a motion to transfer pursuant to § 1404(a) are: (i) convenience of parties (ii) convenience of witnesses (iii) availability of process to compel unwilling witnesses to appear; (iv) cost of obtaining witnesses; (v) ease of access to relevant sources of proof; (vi) site of occurrence of events at issue; (vii) capacity of the alternative venue to expeditiously and inexpensively resolve the action; and (viii) the interest of justice. *See Hutson v. A.H. Robins Co.*, 846 F.Supp. 14, 15 (S.D.N.Y.1994).

The party seeking transfer ordinarily bears the burden of clearly establishing that the transfer is appropriate and that the motion should be granted. *See Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1060 (S.D.N.Y.1987). In the ordinary case, the party seeking transfer is required to specify what evidence and witnesses it intends to rely on and show that the balance of convenience weighs heavily in its favor. *Id.*

The procedural posture of the instant motions require that the standards relevant to Rule 56 must operate in tandem with the standards for *forum non conveniens* and venue transfer motions.

Application of the standard of summary judgment in combination with that of *forum*

*non conveniens* burdens APL, as the movant, to show that there are no genuine issues of material fact as to enough of the relevant *Gulf Oil* factors, such that the balance of those factors could not tip strongly in favor of the Hanjin Claimants.

Combining the § 1404(a) standard with that of Rule 56 place a burden upon APL to show that no genuine issues of material fact exist as to enough of the § 1404 factors outlined above, such that the balance of convenience could not weigh heavily in favor of transfer.

## II. *APL's Motion to Strike the Hanjin Claimants' Fifth Affirmative Defense is Granted*

██ As was mentioned above, discussed in open court at oral argument on March 22, and acknowledged in the parties' briefs, Korean law does apply to *certain* of the issues in the APL Action, but it does not apply to *all* of them. For that reason, APL's motion to strike the defense is granted and the defense is stricken. The Hanjin Claimants are granted leave to replead.

## III. *APL's Motion for Summary Judgment as to Forum Non Conveniens in the APL Action is Granted; the Hanjin Claimants' Motion to Dismiss in the Hanjin Action is Denied*

It should be noted preliminarily with reference to the relative convenience of the respective parties that there are approximately 250 cargo claimants in this case and that more than half of the cargo involved was either shipped from or bound for the United States.

In accordance with *Gulf Oil* the private and public interest factors weighing upon the convenience of the competing fora are reviewed in turn.

### *Private Factors*

The first private interest factor is the relative ease of access to sources of proof.

An apportionment of the degree to which the two shipowners were at fault is a critical issue in this case, thus the availability of witnesses to the Collision looms large among the private factors. The availability of the crew members of the two vessels tips in the favor of neither party since the crew of *Hanjin Hong Kong* were Korean citizens and the crew of the *President Washington* are American citizens. The Hanjin Claimants have asserted that crew members of *Kota Berani* may be important witnesses. However, the conduct of the Hanjin Claimants during the investigation of the Collision conducted by Korean authorities immediately after the fact indicated to the contrary, in that the Hanjin Claimants did not seek to introduce testimony of any of the *Kota Berani*'s crew members at that proceeding. In addition, the Hanjin Claimants have only indicated that crew members of the *Kota Berani* would "presumably" be available for a Korean trial, based upon the vessel's trade. However, it is more likely that any testimony will be taken by deposition and will not depend upon the vagaries of the voyages of the *Kota Berani*.

The Hanjin Claimants point out that the former master of the *Hanjin Hong Kong* is no longer in Hanjin's employ, thus making it unlikely that he could be gotten to testify in this forum. However, the record indicates that a hearing in the Korean investigation of this accident was postponed for two months because this very witness was not available to testify *in Korea* due to his absence from that country. Thus, the status of this witness does not serve to tip the balance in favor of the Hanjin Claimants. Again, deposition testimony can be anticipated, whatever the forum.

The parties' naval architecture experts are respectively from Berkeley, California and London, England. As a matter of geographic distance, their testimony will be more conveniently obtained in New York than in Korea.

Therefore, as to the availability of witnesses and the cost of obtaining their testimony, there are no genuine issues of material fact and this factor does not weight in favor of dismissal.

The question of translation of official documents does not favor either side. The Korean government and the U.S. Coast Guard have both produced investigative reports on

the Collision. Documents from one of these two sources will have to be translated no matter which forum is chosen. Some of the relevant Korean documents have already been translated into English. Korean-speaking experts on Korean law would require many relevant English language documents to be translated for them. English-speaking naval architecture experts would require translations of relevant Korean documents.

Vessel records of the *President Washington* are in APL's possession in California. Records of the *Hanjin Hong Kong* are in Korea in Hanjin's possession. Hanjin maintains a substantial office in New York. APL maintains a substantial office in Korea. The transportation and, if necessary, duplication, of the vessel records does not seem to impose greater inconvenience on one party than the other.

Regarding access to documentary evidence, there is no genuine issue of material fact and this factor does not weigh in favor of dismissal.

Although Korean law provides compulsory process to obtain testimony, these rules apply only to live testimony, thus Korean law does not provide the parties with an opportunity to obtain a sworn, cross-examined deposition from an unwilling witness. Since a number of potential witnesses are seamen who might not be available for trial testimony, this factor could prove significant. There is no material factual issue as to the process factor and it does not weigh heavily in favor of Korea.

Since it is undisputed that the crews of the two ships reside respectively in Korea and the United States, as discussed above, the cost of obtaining the attendance of willing witnesses is a factor which is balanced between the two parties.

An opportunity to view the "premises" in question, in this case the vessels, is pragmatically unfeasible regardless of which forum is chosen.

Enforceability of any judgment is not a relevant consideration in the APL Action since APL has posted security. Since Hanjin has substantial operations in the United States a judgment against it would likely be enforceable in the United States as well. Thus this factor does not raise an issue of material fact and does not weigh in favor of dismissal.

Regarding other practical concerns, as a general matter, it appears that litigation in New York does not pose prohibitive practical problems for Hanjin, in view of the fact that Hanjin and its affiliates litigate and arbitrate in New York with some frequency. *See Chilewich Partners v. M.V. Alligator Fortune,* 853 F.Supp. 744 (S.D.N.Y.1994); *Monsanto Int'l Sales Co. v. Hanjin Container Lines,* 770 F.Supp. 832 (S.D.N.Y.1991); *International Longshoremen's Assn. v. Hanjin Container Lines,* 727 F.Supp. 818 (S.D.N.Y. 1989); *Hanjin Container Lines v. Jurick,* No. 83 Civ. 2026 (SWK), 1984 WL 174 (S.D.N.Y., April 5, 1984); *Hanjin Shipping Co., Ltd. v. R.J. Int'l (The ELEVIT),* S.M.A. No. 3040 (1994); *Genesis Maritime Corp. v. A/S Seateam v. Hanjin Shipping Corp. (The FINIX);* S.M.A. No. 3113 (1994).

In sum, there are no genuine issues of material fact as to enough of the private *Gulf Oil* factors, such that the balance of these factors does not tip strongly in favor of dismissal.

### Public Factors

The question of applicable national law is a relevant public factor. As discussed above, the parties agree that United States law will control certain issues in this case, while Korean law will be applied to others. The Carriage of Goods by Sea Act, 46 U.S.C.App. § 1301 *et seq.* ("COGSA") governs at least some of the cargo claims and this Court is better suited than a foreign court to apply that statute. The need for this Court to apply Korean law is a factor which argues for dismissal, but not strongly. Korea, like the United States, applies the International Regulations for Preventing Collisions at Sea (1972) and applies the same proportionate fault rules as those used by American courts. The parties will be able to cite the Court to already-published English translations of relevant Korean statutes and cases. On the whole, given that both U.S. and Korean law apply to different aspects of the case, this

factor does not weigh strongly in favor of dismissal.

Hanjin suggests that matters such as the transportation of witnesses to the forum and the need to translate documents into the language of the forum would render a trial in New York more expensive than a trial in Korea, but since, as discussed above, the location of witnesses and the translation of documents are both in equipoise, the cost issue cannot be said to weigh strongly in favor of the Korean forum.

The Hanjin Claimants assert that a trial in New York would take more time than one in Korea. But as with expense, the underlying factor of familiarity with governing law is balanced between the United States and Korea, thus the time factor is also balanced.

Hanjin has accurately pointed out that judicial economy argues for keeping two separate but related actions in the same forum. Hanjin further points out motions relating to *forum non conveniens* are presently *sub judice* in both actions. There must, however, be no misunderstanding as to the logical requirements imposed by such a situation. The two motions in the two related actions do not increase each other's momentum towards the foreign forum by virtue of their simultaneous existence. Rather, each motion turns on whether the balance of the *Gulf Oil* factors tips *strongly* in favor of the foreign forum. If the balance in one of the cases fails to strongly favor the foreign forum, then the judicial economy factor in the other case does not favor the foreign forum either. To frame this issue any other way would be to permit bootstrapping by the Hanjin Claimants. It is for this very reason that this Court has opted to rule on the two motions in the related actions at the same time. Since, in this case, neither forum has any significant, active litigation other than these two Actions, involving the same parties, facts and issues involved herein, this factor does not weigh in favor of dismissal.

Regarding the connections of the respective fora to the controversy it must first be noted that the Collision took place in Korean waters and Korea has a legitimate interest in regulating its own shipping traffic. However, APL and many of the cargo claimants in the APL Action are American companies, giving the United States a significant interest in the litigation. *See Maganlal v. M.G. Chemical Co.*, 942 F.2d 164, 169 (2d Cir. 1991); *Maritima Aragua*, 823 F.Supp. 143, 148 (S.D.N.Y.1993); *Herbstein v. Bruetman*, 743 F.Supp. 184, 189 (S.D.N.Y.1990). Indeed, the United States is itself a claimant. Hanjin and its affiliates conduct substantial business with the United States. Hanjin is engaged in the domestic, interstate carriage of goods by truck and rail in the United States. Hanjin maintains a significant business presence within this District and its vessels regularly call in New York. Highlight's two vessels also call in New York with some frequency. The *President Washington* is an American-flag vessel; the *Hanjin Hong Kong* is a Liberian-flag vessel.

Although Korea must be said to have a somewhat more substantial nexus to this litigation than the United States, this factor cannot be said to weigh strongly in favor of dismissal.

Finally, the forum's interest in the outcome and the fairness of burdening citizen-jurors with a trial of a non-local controversy can both be addressed by recognizing that Hanjin is a substantial actor the United States' economy, active in several areas of international and domestic carriage of goods, maintaining offices in twenty American cities, employing numerous workers within the United States' borders and maintaining a substantial business presence here. Thus, although the United States and its citizens have a lesser interest in this action than they would in one between two domestic, local entities, it cannot be said that the burden and expense imposed by trial of this action would be of so little benefit to this country and its citizen-jurors as to be unfair.

For these reasons, it cannot be said that the balance of the public interest factors weigh heavily in favor of dismissal.

■ Regarding APL's motion in the APL action for summary judgment as to the Hanjin Claimants' Sixth affirmative defense of *forum non conveniens,* no genuine issues of material fact exist with regard to enough of the *Gulf* factors such that the balance of

these factors could not tip strongly in favor of dismissal. This motion will be granted.

Regarding Hanjin's motion to dismiss the Hanjin Action on grounds of *forum non conveniens*, it cannot be said that the balance of *Gulf* factors tips strongly in favor of the Korean forum. Litigation in this forum is neither unjust nor oppressive to the Hanjin Claimants so as to merit dismissal on *forum non conveniens* grounds. The Hanjin Claimants' motion to dismiss the Hanjin Action will be denied.

### IV. *APL's Motion for Summary Judgment as to the Hanjin Claimants' Seventh Affirmative Defense Asserting Transfer of Venue is Granted*

APL's motion to strike the Hanjin Claimants Seventh affirmative defense, asserting that venue of the APL Action should be transferred to the Western District of Washington, has been converted, as mentioned previously, to one for summary judgment.

It is of interest to note, preliminarily, that in the Hanjin Action, APL moved for a venue transfer to this Court, and the Court in Washington granted that motion, appropriately disposing of this issue.

The convenience of parties and witnesses is considered to be essential to transfer of venue. *See First City Federal Savings Bank v. Register*, 677 F.Supp. 236, 237 (S.D.N.Y. 1988). As between Seattle and New York, the convenience of the parties weighs in favor of Seattle over New York, but not heavily. It would be a burden upon the Hanjin Claimants to travel to Seattle, and it will only be a moderately greater one to travel to New York. It has already been pointed out that Hanjin maintains a substantial business presence in this District, thus the burden does not appear to be extreme.

American and Korean witnesses will both have to travel a considerable distance in the event of a New York trial. APL would be in the position of having to pay for West Coast witnesses to come to New York. The Hanjin Claimants would bear the additional incremental costs embodied in getting its Korean witnesses to New York rather than Seattle.

Although this burden is somewhat significant, it cannot be said that this factor weighs heavily in favor of Seattle, since some additional expense and inconvenience relating to witnesses will fall on APL as well.

It should also be noted that Hanjin and APL are both large, global organizations while some of the cargo claimants, who have already obtained New York counsel and appeared in the APL Action, are not. Proportionately, a transfer from New York to Seattle would fall harder on such claimants than would the opposite arrangement on Hanjin.

The location of operative facts and the relative ease of access to sources of proof are both factors which favor neither district court, inasmuch as the collision occurred in Korea. The translation issues which were relevant in the comparison between an American or Korean forum drop out of a comparison between two American courts, inasmuch as Korean documents will have to be translated in either case.

The investigative reports of the Korean governmental agencies (in translation) and the U.S. Coast Guard are available to a judge in New York and equally to one in Seattle.

The factors of speed and expense summon a comparison between two judicial Districts of equal resources found in large commercial centers. The Hanjin Claimants have not attempted to join a fact issue as to faster or less expensive litigation in the Western District of Washington as compared to this District.

■ Finally regarding the interest of justice, as already mentioned, the main contestants in this dispute as to venue are large, global organizations with obvious ties to and resources within, this District. Simply put, requiring either of these litigants to litigate either in New York or in Seattle against its will, could hardly be said to work an injustice. If any potential injustice is implicated in this choice of venue, it is that which would be worked upon the smaller cargo claimants who have prepared to litigate this action in its present venue.

There are no genuine issues of material fact as to enough of the § 1404(a) factors,

such that the balance of convenience could not weigh heavily in favor of transfer. Therefore, APL's motion for summary judgment as to the Hanjin Claimants' Seventh affirmative defense seeking venue transfer will be granted.

**Conclusion**

For the foregoing reasons, with regard to the APL Action:

(i) APL's motion to strike Hanjin's Fifth affirmative defense concerning the application of Korean law is granted and that defense is stricken with leave to replead;

(ii) summary judgment as to Hanjin's Sixth Affirmative defense concerning *forum non conveniens* is granted and that defense is dismissed with prejudice;

(iii) summary judgment as to Hanjin's Seventh affirmative defense concerning transfer of venue is granted and that defense is dismissed with prejudice.

With regard to the Hanjin Action, the Hanjin Claimants' motion to dismiss the Hanjin Action on the grounds of *forum non conveniens* is denied.

It is so ordered.